IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY<br>333 South Seventh Street<br>Minneapolis, Minnesota 55402<br><br>　　　　Plaintiff<br><br>v.<br><br>KEVIN T. OLSZEWSKI, ESQUIRE<br>5 South Hickory Avenue<br>Bel Air, Maryland 21014<br><br>and<br><br>LAW OFFICE OF KEVIN T.<br>OLSZEWSKI, P.A.<br>5 South Hickory Avenue<br>Bel Air, Maryland 21014<br><br>Serve On:<br><br>Resident Agent<br>Kevin T. Olszewski, Esquire<br>5 South Hickory Avenue<br>Bel Air, Maryland 21014<br><br>and<br><br>CHARLES BLAIR PHILLIPS<br>P. O. Box 484<br>Darlington, Maryland 21034<br><br>　　　　Defendants | Civil Action No. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT

Minnesota Lawyers Mutual Insurance Company ("MLM"), by its attorneys, Stephan Y.

Brennan, Patrice Meredith Clarke, and Iliff, Meredith, Wildberger & Brennan, P.C., files this Complaint against Kevin T. Olszewski, Esquire ("Mr. Olszewski" when referred to individually), Law Office of Kevin T. Olszewski, P.A. ("Law Firm" when referred to individually) and ("Olszewski" when referred to collectively), and Charles Blair Phillips ("Mr. Phillips"), and states:

## PARTIES

1. MLM is a corporation organized and existing under the laws of the State of Minnesota, which has its principal place of business in Minnesota.

2. Mr. Olszewski is resident and citizen of the State of Maryland. Mr. Olszewski operates the Law Firm, where he practices law, in Bel Air, Maryland.

3. The Law Firm is a professional association organized under the Laws of the State of Maryland, which has its principal place of business in the State of Maryland. The Law Firm's principal place of business is in Bel Air, Maryland

4. Mr. Phillips is a resident and citizen of the State of Maryland. Mr. Phillips resides in Darlington, Maryland, which is in Harford County.

5. The amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a).

7. This action is brought pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§2201, *et seq*.

8. Venue in this District is proper, pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events and omission giving rise to this claim occurred in Maryland, and the insurance policy at issue in this action was issued in Maryland.

## **FACTS**

9. On August 8, 2016, Mr. Olszewski and the Law Firm purchased policy no. 33880 7 (the "First Policy") from MLM.  The policy period of the First Policy is 08/24/2016 to 08/24/2017.  On August 3, 2017, Olszewski purchased policy no. 33880  8 (the "Second Policy") from MLM.  The policy period for the Second Policy is 08/24/2017 to 08/24/2018.[1]

10. On January 4, 2016, Mr. Phillips filed an action against Johnson Buildings, LLC in the District Court for Harford County, Maryland, *i.e.*, *Blair Phillips v. Johnston Builders, LLC, et al.*, District Court for Harford County, Case No. 09-01-0000015-2016 ("District Court Action").

11. Mr. Phillips's attorney at the time of filing the District Court Action was H. Norman Wayne, Esquire ("Mr. Wayne").  In May 2016, Mr. Wayne's appearance was stricken in the District Court Action.  In June 2016, Mr. Olszewski entered his appearance on behalf of Mr. Phillips in the District Court Action.

12. In early September 2016, the defendants in the District Court Action served interrogatories on Mr. Phillips through Olszewski.

13. On October 17, 2016, the defendants in the District Court Action filed a motion to compel and a motion for sanctions, as Mr. Phillips did not respond to their discovery requests in

---

[1] As the First Policy is substantively identical to the Second Policy, except for the respective policy periods, the relevant policy provisions, *infra*, are found both the First Policy and the Second Policy.

a timely manner.  Olszewski did not file responses in opposition to those motions.

14. On October 26, 2016, Olszewski filed notices of service of Mr. Phillips's answers to interrogatories.

15. Shortly thereafter, the defendants in the District Court Action filed a second motion to compel and a second motion for sanctions.  The trial of the District Court Action, at which the judge was to rule on the motions, was postponed.  On December 22, 2016, one of the defense attorneys wrote to the court concerning the motion to compel.

16. On January 13, 2017, the defendants in the District Court Action filed an additional motion for sanctions.  Olszewski did not file a response in opposition to that motion.

17. On January 24, 2017, the District Court ruled on the motion that was filed on January 13, 2017.  The District Court's order stated, *inter alia*, "case shall be dismissed if full and complete Answers to Interrogatories are not provided by 4:30 p.m. on January 30, 2017."

18. On January 30, 2017, Olszewski filed a notice of service of Mr. Phillips's supplemental answers to interrogatories in the District Court Action.

19. On February 2, 2017, the defendants in the District Court Action filed a motion for sanctions and a motion to dismiss.  The defendants took the position that Mr. Phillips's supplemental answers to interrogatories were insufficient and failed to comply with the court's order entered January 24, 2017, *supra*.  Olszewski did not file a written response in opposition to this motion.

20. On February 3, 2017, the trial date, the District Court dismissed the District Court Action as a discovery sanction, as the District Court determined that the supplemental answers to interrogatories did not comply with the Order entered January 24, 2017.

21. Olszewski did not notify MLM of the dismissal of the District Court Action during the time within which it was possible to file a motion to alter or amend the judgment of dismissal on behalf of Mr. Phillips, which is 10 days after entry of judgment under Maryland Rule 3-534.

22. Olszewski did not notify MLM of the dismissal of the District Court Action to MLM during the time within with it was possible to file a motion to revise the judgment of dismissal on behalf of Mr. Phillips, which is 30 days after entry of judgment under Maryland Rule 3-535(a).

23. Olszewski did not file post-judgment motions in the District Court Action.

24. On or about February 8, 2017, without notifying MLM, Olszewski filed an appeal, *Blair Phillips v. Johnston Builders, et al.*, Circuit Court for Harford County, Case No. 12-C-17-000699 ("Circuit Court Appeal"). In a case such as the District Court Action, the initial appeal is to the Circuit Court rather than to the Court of Special Appeals.

25. The District Court sent the appeal to the Circuit Court on March 21, 2017, and a Notice of Record Appeal was issued by the Circuit Court Appeal on March 23, 2017.

26. Olszewski did not notify MLM of the Circuit Court Appeal while the appeal was pending.

27. Olszewski did not file any documents in the Circuit Court Appeal.

28. On May 15, 2017, the Circuit Court issued a Memorandum Opinion and Order dismissing the Circuit Court Appeal.

29. Olszewski did not notify MLM of the existence of the Circuit Court Appeal until he wrote to MLM on August 21, 2018. Likewise, Olszewski did not notify MLM of the

dismissal of the Circuit Court Appeal until he wrote to MLM on August 21, 2018.

30.     Notwithstanding the facts above, Olszewski did not report this matter to MLM during the policy period of the First Policy or within 60 days after the expiration of the policy period of the First Policy.

31.     If Olszewski had notified MLM of the dismissal of the District Court Action in a timely manner, then MLM could have participated in the District Court Action, either by assigning counsel from MLM's panel to assist Olszewski or by directly advising Olszewski with regard to filing post-judgment motions.

32.     If Olszewski, had notified MLM of the filing of the Circuit Court Appeal in a timely manner, then MLM could have participated in the Circuit Court Appeal, either by assigning counsel from MLM's panel to assist Olszewski or dy directly advising Olszewski with regard to the Circuit Court Appeal.  It was a simple matter to avoid the dismissal of the Circuit Court Appeal that occurred in May 2017, as the Circuit Court Appeal would not have been dismissed if Olszewski had filed customary documents that one must file in an appeal.

33.     Olszewski also did not disclose the dismissal of the District Court Action or the Dismissal of the Circuit Court Appeal to MLM in the insurance application that was incorporated into the Second Policy.  Indeed, Olszewski made representations in the application, upon which MLM relied in issuing the Second Policy, that he had no knowledge of any facts that could lead to a claim.

34.     On December 14, 2017, Olszewski received a letter from Gregory M. Kline, Esquire ("Mr. Kline"), an attorney "retained to represent Mr. Charles Blair Phillips with regard to a claim of professional negligence against" Olszewski arising from the representation of Mr.

Phillips in the District Court Action and Circuit Court Appeal. "This letter is to provide you with formal notice of this claim and to request that you notify your professional liability carrier." Mr. Kline also "formally request[ed] that you provide my office, on behalf of Mr. Phillips, with a complete copy of your file in this matter," as "Mr. Phillips was not provided with any copies of the pleadings and related documentation regarding the above-referenced case."

35. Olszewski did not notify MLM of his receipt of the December 14, 2017 letter until August 21, 2018, when Olszewski responded to inquiries from an MLM underwriter regarding his application for a new MLM policy.

36. Olszewski did not respond to Mr. Kline's letter dated December 14, 2017. Olszewski also did not comply with Mr. Kline's, and by extension Mr. Phillips's, request for a copy of his file. As a result, Mr. Kline wrote to Olszewski again on May 1, 2018. In this letter, Mr. Kline made "a formal demand for settlement of Mr. Phillips' claims against you. Mr. Phillips' [sic] demands payment from you in the amount of $250,000 in full and final satisfaction of his claims against you." Mr. Kline's letter also states "[i]f we are unable to resolve this case within 30 days of this letter, I have been instructed to file suit against you and pursue all legal remedies available."

37. Olszewski did not notify MLM of Mr. Kline's letter dated May 1, 2018 within 30 days of the date of the letter. Olszewski did not notify MLM of Mr. Kline's letter dated May 1, 2018 until August 21, 2018, when Olszewski responded to inquiries from an MLM underwriter regarding his application for a new MLM policy.

38. As Olszewski did not timely notify MLM of Mr. Kline's letters, and as Olszewski did not respond to Mr. Kline's repeated request for a copy of his file, on September 3, 2018 Mr.

Kline filed a legal malpractice action against Olszewski on behalf of Mr. Phillips, *Blair Phillips v. Kevin T. Olszewski, Esquire, et al.*, Circuit Court for Harford County, Case No. C-12-CV-18-000585 ("Legal Malpractice Action").

39. If Olszewski had notified MLM of his receipt of the December 14, 2017 letter from Mr. Kline in a timely manner, MLM would have (1) ensured that Mr. Kline received a copy of Mr. Phillips' file as requested in the letter, and (2) would have communicated with Mr. Kline about the claim, which was not at that time the subject of a lawsuit, and likely would have avoided the filing of the Legal Malpractice Action.

40. If Olszewski had notified MLM of his receipt of Mr. Kline's letter dated May 1, 2018 in a timely manner, MLM would have (1) ensured that Mr. Kline received a response to his letter within 30 days as he requested in the letter, and (2) would have communicated with Mr. Kline about the claim, which was not at that time the subject of a lawsuit, and likely would have avoided the filing of the Legal Malpractice Action.

41. In both the First Policy and the Second Policy (*see*, Exhibits 1 and 2), the first part of the "Coverage" section provides that a claim will only be covered, subject to all of the other terms of the policies, if the claim is both deemed made and reported to MLM during the policy period or within 60 days after the end of the policy period in which the claim was first made:

> WE will pay, subject to OUR limit of liability, all DAMAGES the INSURED may be legally obligated to pay and CLAIM EXPENSE(S), due to any CLAIM, provided that:
>
> (1) the CLAIM arises out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible;
> (2) the act, error, or omission occurred on or after the PRIOR ACTS RETROACTIVE DATE and prior to the expiration date of the POLICY PERIOD;

(3) the CLAIM results from the rendering of or failure to render
PROFESSIONAL SERVICES;
(4) the CLAIM is deemed made during the POLICY PERIOD; <u>and</u>
(5) the CLAIM is reported to US during the POLICY PERIOD or within 60 days
after the end of the POLICY PERIOD.

42. In both the First Policy and the Second Policy, the second part of the "Coverage" section states:

A CLAIM is deemed made when:
(1) a demand is communicated to an INSURED for DAMAGES resulting from
the rendering of or failure to render PROFESSIONAL SERVICES; or
(2) an INSURED first becomes aware of any actual or alleged act, error, or
omission by any INSURED which could reasonably support or lead to a CLAIM.

All CLAIMS arising out of the same or related PROFESSIONAL SERVICES
shall be considered one CLAIM, and shall be deemed made when the first CLAIM
was deemed made.

43. Both the First Policy and the Second Policy contain a "Defense and Settlement" section, which states "WE have the exclusive right to investigate, negotiate, and defend CLAIMS. . ." The "Defense and Settlement" section of both the First Policy and the Second Policy also provides "[t]he INSURED must cooperate with US in the investigation and defense. . . ."

44. In both the First Policy and the Second Policy, the definition of "Claims" states:

"CLAIMS" means:

(1) a demand communicated to the insured for DAMAGES or PROFESSIONAL
SERVICES;
(2) a lawsuit served upon the INSURED seeking such DAMAGES;
(3) any notice or threat, whether written or oral, that any person, business entity or
organization intends to hold an INSURED liable for such DAMAGES; or
(4) any act, error or omission by any INSURED which could reasonably support
or lead to a demand for DAMAGES.

45. In both the First Policy and the Second Policy, "'DAMAGES' means[] monetary

judgments or monetary settlements," subject to the enumerated exceptions.

46.     In both the First Policy and the Second Policy, "PROFESSIONAL SERVICES" includes "legal or notary services provided for others, while engaged in the private practice of law. . ."

47.     Both the First Policy and the Second Policy include "NOTICE OF CLAIMS AND DISCIPLINARY PROCEEDINGS," which are separate and distinct from the reporting requirement that triggers coverage under the "Coverage" section of the policies, *supra*.  Under these sections, "[i]n the event of a CLAIM, DISCIPLINARY PROCEEDING, disciplinary investigation or notice to appear before a review board, the INSURED must: (1) give immediate written notice to US; and (2) forward every demand, notice, summons, or other communication received by the INSURED or his or her representative to" MLM.  Coverage under the policies is not expanded by compliance with this notice provision, as even if an insured gives MLM immediate notice of a claim such notice must be received by MLM "during the POLICY PERIOD or within 60 days of the end of the POLICY PERIOD for coverage to apply."

48.     Both the First Policy and the Second Policy contain a "Representation in Application" section, which states:

> The application for coverage is part of this policy.  The application includes any Firm Information Verification form and/or Renewal Update form.
>
> By acceptance of the policy the INSURED agrees:
>
> (1) the statements in the application are the representations of all INSUREDS;
> (2) such representations are material as this policy is issued in reliance upon the truth of such representations; and
> (3) this policy embodies all of the agreements between the INSURED, US and/or OUR agent.

49.     Olszewski signed the application for the Second Policy on June 6, 2017.  In

response to the question "[i]n the last 12 months . . . has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm, Olszewski responded "No."

        50.     Olszewski also represented to MLM in the application for the Second Policy:

Undersigned authorized representative of the firm agree to all of the following:

● Declares after diligent inquiry the above statements and particulars are true and no material facts have been suppressed or misstated.

. . .

● If the Company accepts this application by issuing a policy, this application shall be the basis of the policy of insurance and incorporated therein. The policy will be issued on the information contained in the application and all such information is deemed to be "material."

● The applicant hereby certifies that all known claims, lawsuits [,] incidents, and disciplinary investigations have been reported to the present or previous insurance carriers and the applicant has no knowledge of any threatened litigation or existing fact or situation which could result in a claim being filed against the applicant.

● Failure by the applicant to report any known claim, lawsuit, incident, or disciplinary investigation or any known facts which may result in a claim, to current or previous insurers may result in the declination of coverage for these matters by current or previous insurers.

        51.     Olszewski also provided "Warranty Statement(s)" as part of the application for the

Second Policy, which Olszewski signed on August 1, 2017 and August 2, 2017, respectively.

The "Warranty Statement(s)" state:

Undersigned authorized representative of the firm certifies that:

● There have been no significant changes in the firm's practice or any information contained in the previously submitted application.

● After having made inquiry of all firm attorneys, is not aware of any claims or circumstances that could result in claims or disciplinary proceedings that have not been reported to Minnesota Lawyers Mutual.

- 11 -

● All known claims, lawsuits, incidents, and/or disciplinary proceedings have been reported to the present or previous insurance carriers, and the undersigned, after having made inquiry of all firm attorneys, has no knowledge of any threatened litigation or existing fact or situation which could result in a claim or disciplinary action being filed against the firm.

### COUNT I - FOR A DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE FIRST POLICY

52. MLM adopts by reference, as if fully set forth herein, the averments of paragraphs 1-51.

53. With regard to potential claims, and also with regard to determining whether a "representation in application" provision or a "prior knowledge" exclusion applies to exclude coverage, Maryland courts use an objective standard of reasonableness in determining an insured's prior knowledge in professional liability insurance cases.

54. Definition 4 of "CLAIMS" in the MLM Policy, *supra*, "means . . . any act, error or omission by any INSURED which could reasonably support or lead to a demand for DAMAGES." This occurred with regard to Mr. Phillips's claim against Olszewski in the Winter of 2017, *supra*.

55. Under the Policy, *supra*, "[a] CLAIM is deemed made when . . . an INSURED first becomes aware of any actual or alleged act, error, or omission by any INSURED which could reasonably support or lead to a CLAIM, and "[a]ll CLAIMS arising out of the same or related PROFESSIONAL SERVICES shall be considered one CLAIM, and shall be deemed made when the first CLAIM was deemed made." Mr. Phillips's claim against Olszewski, therefore, is deemed made in the Winter of 2017, *supra*.

56. The claim, however, was not reported to MLM during the policy period of the

First Policy nor within 60 days after expiration of the policy period of the First Policy, which was the necessary second element of the two-part trigger of coverage under the First Policy, *supra.*

57.     Olszewski also violated the separate and distinct "NOTICE OF CLAIMS AND DISCIPLINARY PROCEEDINGS" provision of the First Policy, and MLM was prejudiced by Olszewski's violation of this provision of the First Policy.

58.     The "Defense and Settlement" section of the MLM Policy affords MLM, *inter alia*, the exclusive right to investigate or defend "CLAIMS," and as the plain language of the Policy establishes this includes "CLAIMS" that exist before (1) any notice or threat that a person intends to hold an insured liable for "DAMAGES," or (2) any demand for "DAMAGES" is communicated to an insured, *supra.*  The purpose of such provisions in the Policy is to enable MLM to participate in situations such as existed in early 2017 in the District Court Action, and the Circuit Court Appeal, so that actual "CLAIMS" for "DAMAGES" can be avoided when it is possible to do so, or so that damages caused by insureds' acts or omissions may be mitigated if not entirely avoided.

59.     The "Defense and Settlement" section of the First Policy also provides "[t]he INSURED must cooperate with US in the investigation and defense. . ."  Olszewski violated this provision of the First Policy, and MLM was prejudiced by Olszewski's violation of this provision of the First Policy.

60.     There is no coverage, therefore, for Mr. Phillips's claim against Olszewski under the First Policy.

61.     An actual and justiciable controversy exists between MLM, Olszewski, and Mr.

Phillips as to whether there is coverage for Mr. Phillips's claim against Olszewski under the First Policy.

## COUNT II - FOR A DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE SECOND POLICY

62. MLM adopts by reference, as if fully set forth herein, the averments of paragraphs 1-61.

63. As stated, *supra*, Mr. Phillips's claim was deemed made before the Policy Period for the Second Policy. There is, therefore, no coverage for Mr. Lucht's claim under the Second Policy.

64. There also is no coverage for Mr. Phillips's claim under the Second Policy, because coverage under the Second Policy is barred by the "Representation in Application" provision given Olszewski's responses to questions, and warranties, in the application for the Second Policy regarding Olszewski's supposed lack of knowledge of facts or circumstances that could result in an actual claim for damages by Mr. Phillips against Olszewski, *supra.*

65. Olszewski also violated the "NOTICE OF CLAIMS AND DISCIPLINARY PROCEEDINGS" section of the Second Policy, as well as "Defense and Settlement" section of the MLM Policy that provides "[t]he INSURED must cooperate with US in the investigation and defense. . ." of the Second Policy, with regard to Mr. Kline's letter(s), *supra*, and MLM was prejudiced by Olszewski's violations of these provisions of the Second Policy.

66. An actual and justiciable controversy exists between MLM, Olszewski, and Mr. Phillips as to whether there is coverage for Mr. Phillips's claim against Olszewski under the Second Policy.

WHEREFORE, MLM seeks a declaratory judgment that declares:

A. There is no coverage for Mr. Phillips's claim against Olszewski under the First Policy; and

B. There is no coverage for Mr. Phillips's claim against Olszewski under the Second Policy.

Respectfully submitted,

　　/s/ Stephan Y. Brennan
Stephan Y. Brennan
Federal Bar No. 23597
Iliff, Meredith, Wildberger & Brennan, P.C.
Patriots Plaza, Suite 201-203
8055 Ritchie Highway
Pasadena, Maryland 21122
(410) 685-1166
fax (410) 685-1233
e-mail: steve@ilimer.com


　　/s/ Patrice Meredith Clarke
Patrice Meredith Clarke
Federal Bar No. 18824
Iliff, Meredith, Wildberger & Brennan, P.C.
Patriots Plaza, Suite 201-203
8055 Ritchie Highway
Pasadena, Maryland 21122
(410) 685-1166
fax (410) 685-1233
e-mail: patrice@ilimer.com

Attorneys for Minnesota Lawyers Mutual Insurance Company, Plaintiff